**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CHEESE HOG MANUFACTURING, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>REDDYMADE LLC, AND ADAM LEWANDOWSKI,<br><br>*Defendants*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 1:23-cv-155<br><br>Judge Jeffery P. Hopkins |

**OPINION AND ORDER**

This trademark dispute concerns the "Palazzolo's Cheese Hog" mark, which Plaintiff Cheese Hog Manufacturing ("CHM") acquired after Palazzolo Manufacturing Company ("PMC") dissolved. Defendant ReddyMade LLC ("ReddyMade") later marketed cheese shredders under the name "The Cheese Hog." CHM alleges trademark infringement, while ReddyMade contends that PMC abandoned the mark before CHM acquired it and asserts related affirmative defenses and counterclaims.

Before the Court are CHM's Motion for Summary Judgment (Doc. 78), ReddyMade's Motion for Summary Judgment (Doc. 74), and ReddyMade's Motion to Strike (Doc. 84).

Peter Palazzolo's father needed hundreds of pounds of shredded cheese for church dinners. So the younger Palazzolo invented a large-scale cheese shredder. What started small grew into a business—Palazzolo Manufacturing Company (PMC)—that distributed its patented shredder far and wide. That shredder bore a trademarked name: "Palazzolo's Cheese Hog." When it came time for Peter Palazzolo to retire, he dissolved PMC and looked for a

buyer for the business's assets. Two years later, he transferred the "Palazzolo's Cheese Hog" trademark to a new (and aptly named) company: Cheese Hog Manufacturing (CHM).

But in the meantime, ReddyMade LLC had started selling its own cheese shredders—also called "The Cheese Hog." So CHM sued ReddyMade, alleging that ReddyMade infringed its newly acquired "Cheese Hog" mark. ReddyMade responded that PMC abandoned the mark when it shut down, so CHM never validly acquired it. ReddyMade thus asserted abandonment (and several other grounds) as affirmative defenses—and as counterclaims for cancelation of CHM's trademark and associated damages. Both sides moved for summary judgment. But there is a genuine dispute of material fact as to whether PMC abandoned the trademark. And that dispute permeates most of the other claims, defenses, and counterclaims. That means a reasonable jury could rule for either party—so this Court cannot yet enter judgment on most claims. Only CHM's motion for summary judgment on ReddyMade's fraud-based affirmative defenses and counterclaims is granted.

Accordingly, the Court **DENIES** ReddyMade's Motion for Summary Judgment (Doc. 74), **DENIES IN PART AND GRANTS IN PART** Cheese Hog's Motion for Summary Judgment (Doc. 78), and **DENIES** ReddyMade's Motion to Strike Plaintiff's Ex. 65-1 (Doc. 84).

## I. BACKGROUND

### A. Factual Background

The cheese shredders at the center of this case have a humble beginning. Peter Palazzolo ("Palazzolo") built a shredder for his father, who needed hundreds of pounds of cheese for his church's pasta dinner fundraiser. Palazzolo Dep., Doc. 53, 8:22–9:23. Some of Palazzolo's relatives were chefs, and they told Palazzolo how valuable a good shredder could

be. So, Palazzolo built a new and improved prototype, which he patented. *Id.* at 9:5–10:20. In 1990, he began selling the shredder, which he called "The Cheese Hog." *Id.* at 11:11–12. Business boomed, with sales of roughly one million dollars per year. *Id.* at 22:14–23:4. And in 2013, Palazzolo Manufacturing Company (PMC) obtained federal trademark registration for a design featuring a hog's head and the words "Palazzolo's Cheese Hog." Am. Compl., Ex. A, Doc. 25-1, PageID 462.

After several decades in business, Palazzolo began stepping away in 2019. In October, he posted a notice to "all [his] customers" that he would "semi-retire"—offering repair information over the phone and distributing replacement parts but ceasing production of new shredders. Palazzolo Dep., Ex. 2, Doc. 53-2, PageID 809. That was because his wife's health was failing, and he was advancing in age himself. Palazzolo Decl., Doc. 65, PageID 2735.[1] Palazzolo says that in May of 2020, PMC stopped offering parts for purchase, and its website shut down soon after. Palazzolo Dep., Doc. 53, 71:11–21. PMC's customers confirm that they were unable to purchase new Cheese Hogs and parts around that time—and in some cases, that they were unable to purchase parts even in 2019. Wotrang Dep., Ex. 4, Doc. 79-4, PageID 4874; Brand Decl., Ex. E, Doc. 82-4, PageID 5074; Alsamawi Decl., Ex. F, Doc. 82-5, PageID 5077. Finally, Palazzolo dissolved PMC in October 2020. Palazzolo Dep., Ex. 5, Doc. 53-5, PageID 824.

While Palazzolo was retiring, he corresponded with potential buyers of PMC's assets. Palazzolo says he was always intending to sell—not abandon—those assets, including the trademark. Palazzolo Decl., Doc. 65, PageID 2735. By May of 2019, Palazzolo

---

[1] The Court cites Palazzolo's declaration while relating the facts of this case because the Court will deny ReddyMade's motion to strike that declaration. *See infra* Section III.A.

commissioned a valuation of PMC. *Id.*, Ex. 1, Doc. 65-1, PageID 2734; Palazzolo Dep., Ex. 6, Doc. 53-6, PageID 830. Palazzolo also saved "everything that would be needed to sell the company," like a customer database, owner's manuals, tools, and information about when the next payment for the trademark was due. Palazzolo Dep., Doc. 53, 33:14–34:7, 38:9–10, 38:18–21. And Palazzolo engaged in talks with potential buyers, Presto Brands and Deltec. *Id.* at 40:8–41:22. The Presto and Deltec negotiations fell apart over differences in valuations and contract terms, and Palazzolo's sales efforts slowed in 2021. *Id.* at 40:4–14, 44:19–25, 66:8–69:6. Palazzolo explains that the lull occurred because his wife passed away, and he was tied up in efforts to sell his warehouse and house—all while moving into and back out of a nursing home during the Covid pandemic. *Id.*

Eventually, Palazzolo assigned the trademark to Richard Scott Fahey ("Fahey"), his stepson, for one dollar. CHM Dep., Doc. 64, 194:6. Fahey had worked for his stepfather from 2015 to 2018—building and selling machines, taking calls, and maintaining the website—as "[s]uccession planning" for when Palazzolo retired. *Id.* at 78:8–79:20. But he and PMC mutually separated in 2018 over disagreements about business strategy and PMC's ability to support two salaries, plus a family dispute between Fahey and his mother. *Id.* at 110:2–112:25; Fahey Decl., Ex. 2, Doc. 65-2, PageID 2738. Fahey says the family began to reconcile in 2019, but business talks took a backseat to his mother's illness. Fahey Decl., Ex. 2, Doc. 65-2, PageID 2738. It was not until early 2022—after Palazzolo's wife passed—that Palazzolo offered PMC's assets (including the trademark) to Fahey. CHM Dep., Doc. 64, 190:10–193:23. Fahey accepted the offer. He incorporated CHM in April, started up sales in June, and executed an assignment of the trademark in September. *Id.*, Ex. 33, Doc. 64-33, PageID 2687; *id.*, Doc. 64, 305:5–13; Palazzolo Dep., Ex. 4, Doc. 53-4, PageID 813. Fahey also

applied for renewal of the trademark in November 2022, and the U.S. Patent and Trademark Office (USPTO) granted that application the following June. CHM Dep., Ex. 3, Doc. 64-3, PageID 2429–33. Finally, Palazzolo and Fahey executed a corrective assignment in December, listing their companies rather than their personal names as assignor and assignee. Palazzolo Dep., Ex. 5, Doc. 53-5, PageID 815.

ReddyMade came on the scene after PMC dissolved (in October 2020) but before Fahey founded CHM and claimed the trademark (in 2022). PMC's former customers needed a new vendor for shredders and parts, and ReddyMade wanted to fill that gap. *See, e.g.*, Wotrang Dep., Exs. 3–6, Docs. 79-4–7, PageID 4874–82. ReddyMade was aware of the "Palazzolo's Cheese Hog" mark. ReddyMade Dep., Doc. 67, 29:9–14. Adam Lewandowski, ReddyMade's sole owner, sought legal advice on whether he could use "Cheese Hog" in connection with ReddyMade's potential shredders. Lewandowski Dep., Doc. 60, 18:1–25:13. One attorney, Vince Wiltse, told him PMC was dissolved. *Id.* at 22:14–16. Another, Stephen Scherrer, opined that the "Palazzolo's Cheese Hog" trademark had been abandoned. *Id.* at 24:19–21. And Lewandowski confirmed with PMC's vendors that they were no longer supplying PMC. *Id.* at 26:1–5. Finally, Kevin Carrara, who was considering joining ReddyMade, reached out to email addresses he believed belonged to Palazzolo and his family to discuss the Cheese Hog machines. Carrara Dep., Exs. 3–4, Docs. 54-3–4, PageID 938–39. But neither address was Palazzolo's; one was his deceased wife's. Palazzolo Decl., Ex. 1, Doc. 65-1, PageID 2736. Thus, ReddyMade and Lewandowski never heard back from Palazzolo.

Satisfied that it could proceed, ReddyMade started by repairing old Palazzolo's Cheese Hog machines in early 2021 and graduated to reverse-engineering and constructing similar

shredders a few months later. ReddyMade Dep., Doc. 67, 18:16–22:5. The shredders were designed to be "as close to a replica" of PMC's "as possible." ReddyMade Dep., Ex. 8, Doc. 67-8, PageID 3678. ReddyMade called its shredder "The Cheese Hog" so that customers would know its machine was similar to the Palazzolo Cheese Hog. *Id.*, Doc. 67, 30:4–11. ReddyMade copied parts of PMC's user manuals to create its own. *Id.* at 38:6–10. And its website ("cheesegratershredder.net") is almost the same as PMC's ("cheesegratershredder.com"). *Id.* at 40:6–8. Unsurprisingly, then, some customers believed ReddyMade was "taking over" PMC and "getting [the Cheese Hog] back into production." *Id.*, Exs. 16, 19, Docs 67-16, 67-19, PageID 3741, 3747.

ReddyMade tried to trademark the phrase "The Cheese Hog" in connection with its shredders, filing an application in August 2021. *Id.*, Ex. 13, Doc. 67-13, PageID 3702. But the USPTO denied the application, saying ReddyMade's proposed mark would likely be confused with the "Palazzolo's Cheese Hog" mark. *Id.*, Ex. 14, Doc. 65-14, PageID 3709–10. ReddyMade abandoned its application after Fahey contacted ReddyMade in February 2022 and accused it of infringing the "Palazzolo's Cheese Hog" mark. *Id.*, Doc. 67, 93:14–94:2. After receiving Fahey's message, ReddyMade took steps to remove "Palazzolo" from its materials. *Id.*, Ex. 33, Doc. 67-33, PageID 4161. Initially, though, ReddyMade continued to use the phrase "Cheese Hog" and sought marketing advice on leveraging that phrase without "blatantly putting it on our website." *Id.*, Exs. 31, 42, Docs. 67-31, 42, PageID 4151, 4184. But later in 2022, ReddyMade stopped using the phrase "Cheese Hog" and switched its shredder branding to "Top Shredder." *Id.*, Doc. 67, 79:10–20.

**B. Procedural History**

CHM sued ReddyMade and Lewandowski for unauthorized use of the "Palazzolo's Cheese Hog" trademark. CHM alleged federal trademark infringement under the Lanham Act and sought enhanced damages for willful infringement. Am. Compl., Doc. 25, ¶¶ 50–53. CHM also asserted claims for federal unfair competition and false designation of origin, Ohio common-law trademark infringement, and Ohio deceptive trade practices. Am. Compl., Doc. 25, ¶¶ 57–77. These claims were based on the same underlying allegations: that ReddyMade misrepresented its shredders by associating them with the "Palazzolo's Cheese Hog" mark. *Id.*

In addition to denying CHM's claims, ReddyMade answered with several affirmative defenses. The affirmative defenses center on the argument that PMC abandoned its trademark when Palazzalo posted his semi-retirement notice, stopped selling Cheese Hogs (and eventually parts), and dissolved PMC. ReddyMade's Answer and Counterclaims, Doc. 31, PageID 520, ¶¶ 1, 8. In ReddyMade's view, PMC could not later transfer the mark to CHM because PMC had already abandoned the mark. *Id.* at PageID 520–22, ¶ 2. Besides abandonment, ReddyMade raised multiple affirmative defenses—including improper assignment and renewal, estoppel, fraud on the USPTO, fraudulent renewal of the mark, and unclean hands. *Id.* at PageID 522–23, ¶¶ 2–7. Each defense has a common core: Because PMC abandoned its mark, it could not sue on the mark, assign it, falsely tell the USPTO it possessed the mark, or go back on its word when ReddyMade relied on the abandonment. *Id.*

ReddyMade also asserted several counterclaims. The first four requested cancelation of the "Palazzolo Cheese Hog" mark and damages for fraudulent registration based on the same theories underlying the affirmative defenses. *Id.* at PageID 530–33, ¶¶ 58–87.

ReddyMade also asserted several counterclaims for infringement of its "Top Shredder" mark. *Id.* at PageID 533–40, ¶¶ 88–149. The parties stipulated to dismissal of those counterclaims. Doc. 49, PageID 699.

Finally, the parties moved for summary judgment. CHM moved for summary judgment on all outstanding issues: its claims, ReddyMade's defenses, and ReddyMade's counterclaims. Doc. 78, PageID 4640. ReddyMade moved for summary judgment "on all of [CHM's] claims" and argued that summary judgment was appropriate on some of its affirmative defenses. Doc. 74, PageID 4533, 4537–46. Along the way, ReddyMade also moved to strike Palazzolo's declaration. Doc. 84, PageID 5130.

## II. STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

Furthermore, as here, when parties file cross motions for summary judgment, "[e]ach party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law." *Fed. Energy Regul. Comm'n v. Coaltrain Energy, L.P.*, 501 F. Supp. 3d 503, 522 (S. D. Ohio 2020). "The fact that one party fails to satisfy that burden on his or her own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other motion." *Id.*

## III. LAW AND ANALYSIS

To organize its decisions on the parties' wide-ranging motions, claims, defenses, and counterclaims, the Court proceeds as follows.

*First*, the Court denies ReddyMade's motion to strike Palazzolo's declaration. Resolving that motion settles which exhibits the Court can consider when evaluating the other motions.

*Second*, the Court turns to the parties' competing motions for summary judgment. The heart of this case is ReddyMade's theory that PMC abandoned its trademark and thus could

not transfer it to CHM. That theory is ReddyMade's leading affirmative defense and its first counterclaim. The Court determines that genuine issues of material fact remain on that issue, which means that neither party is entitled to full summary judgment.

*Third*, the Court turns to ReddyMade's other affirmative defenses and counterclaims: estoppel, improper assignment, improper renewal, fraudulent renewal, and unclean hands. As the Court described above, many of these affirmative defenses and counterclaims hinge on abandonment. Accordingly, the genuine issues of material fact that preclude summary judgment on abandonment have the same effect on many of ReddyMade's other defenses and counterclaims. The exception is the fraud-based defenses and counterclaims, where ReddyMade failed to create a genuine dispute on Fahey's allegedly deceptive intent.

*Fourth*, the Court analyzes CHM's claims against ReddyMade, starting with federal trademark infringement. Here, too, the genuine disputes over abandonment permeate the analysis. Abandonment is not just a defense; it "is definitional in nature, setting limits on the scope of the trademark right." *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 847 (6th Cir. 2013). It is no surprise that some elements of CHM's claim hinge on whether the mark was abandoned. That means the Court denies summary judgment on CHM's federal trademark infringement claim—and thus on its other claims, which share critical elements.

**A. Motion to Strike Palazzolo's Declaration**

To decide whether this case presents genuine issues of material fact, the Court must first decide what evidence to consider. ReddyMade hopes to winnow Cheese Hog's evidence down, asking the Court to strike Palazzolo's declaration as a sham. Litigants cannot put facts into dispute just by denying them in a declaration—at least not where those denials contradict the declarant's previous statements. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908

(6th Cir. 2006). In ReddyMade's view, that is precisely what Cheese Hog is attempting. The Court disagrees.

Courts analyze motions to strike alleged sham affidavits or declarations in two steps. First, the Court must ask whether the declaration "directly contradict" the declarant's prior testimony. *Id.* If so, the Court must strike the declaration, unless the declarant has a "persuasive justification" for the variance in his statements. *Id.* If there is no clear contradiction, the Court will not strike the declaration unless it is "in tension with th[e] prior testimony" and "circumstances show that the party filed the affidavit merely to manufacture a sham fact issue." *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021) (quotation omitted).

Courts construe "whether [an] affidavit directly contradicts prior deposition testimony narrowly." *Johnson v. Ford Motor Co.*, 13 F.4th 493, 501 (6th Cir. 2021). ReddyMade attacks Palazzolo's declaration that "[a]t no point did I ever intend to abandon the Palazzolo's Cheese Hog Mark or for use of the mark not to be resumed," and "I always intended to sell . . . the Palazzolo's Cheese Hog Mark . . . so that the business would continue." Doc. 84, PageID 5132 (quoting Palazzolo Decl., Ex. 1, Doc. 65-1, PageID 2735). To ReddyMade, that statement contradicts Palazzolo's deposition testimony that "after I closed [Palazzolo Manufacturing], I had no interest in going back in at 83 years old, reopening the company again." *Id*. (quoting Palazzolo Dep., Doc. 53, 44:3–14). As ReddyMade views it, the declaration's version of events—Palazzolo intended to sell rather than abandon the mark—contradicts the deposition's version that Palazzolo never intended to reopen.

There is no contradiction, direct or otherwise. When Palazzolo closed PMC, he had three options: abandon the business and its property for good, reopen himself, or sell to a third

party. In his deposition, Palazzolo ruled out reopening the business himself, citing his age and his wife's illness and death. Palazzolo Dep., Doc. 53, 42:1–7. And in his declaration, Palazzolo ruled out abandoning the business and its property for good. Palazzolo Decl., Ex. 1, Doc. 65-1, PageID 2735. Those statements do not contradict. They are both consistent with Palazzolo choosing the third option: selling his business's property, including the mark. In fact, Palazzolo's deposition testimony that he had no interest in "going back in" and "reopening the company" was in response to a question about when he decided he "want[ed] to sell the company." Palazzolo Dep., Doc. 53, 42:1–4. The declaration also supports Palazzolo's intention to sell: "I always intended to sell the assets of Palazzolo's Mfg." Palazzolo Decl., Ex. 1, Doc. 65-1, PageID 2735. Accordingly, the declaration and deposition are harmonious, not discordant.

Because Palazzolo's declaration does not contradict his prior testimony, the Court may strike the declaration only if it is "in tension" with the deposition and other evidence shows that it is a sham. *Boykin*, 3 F.4th at 842. The statements are not in tension. As the Court explained, they are both consistent with Palazzolo's intent to sell his company's assets. Even if they were in tension, other evidence does not prove the declaration a sham. Courts consider three nonexhaustive factors that can explain any tension: (1) whether the declarant was "cross-examined during his earlier testimony," (2) whether the declaration was based on new evidence that was not available during the deposition, and (3) whether the earlier testimony "reflects confusion" that that declaration tries to explain. *Aerel, S.R.L.*, 448 F.3d at 909. Here, while Palazzolo was questioned by ReddyMade's attorney during the deposition, there was neither intervening evidence nor an attempt to explain confusion. Therefore, the *Aerel* factors are of limited value. After all, there was no tension or confusion to explain. Thus, the Court

will not linger on those factors. *See Johnson*, 13 F.4th at 501 n.6 (noting the three *Aerel* factors but finding that a declaration should not be stricken without walking through the factors); *Boykin*, 3 F.4th at 842–32 (finding that a declaration should not be stricken without mentioning the *Aerel* factors).

While the *Aerel* factors are not helpful here, other evidence is. Most notably, Palazzolo's declaration that he always intended to sell his company's assets is supported by his deposition—the very document ReddyMade cites to allege a contradiction. According to his deposition, Palazzolo talked with potential purchasers of the assets, sought a valuation, and saved renewal information for the "Palazzolo's Cheese Hog" mark. Palazzolo Dep., Doc. 53, 33:14–34:7, 40:1–41:17. All those actions are consistent with Palazzolo intent to "sell" his business's assets rather than "abandon[ing]" them. Palazzolo Decl., Ex. 1, Doc. 65-1, PageID 2735. That corroborating, pre-declaration evidence means that Palazzolo did not submit a sham declaration to "create a factual issue" where there was previously none. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Palazzolo invariably contested abandonment.

Because Palazzolo's declaration does not clearly contradict his deposition testimony, and because there is no other reason to brand that declaration a sham, the Court denies the Motion to Strike Plaintiff's Exhibit 65-1 (Doc. 84). Accordingly, the Court will consider that declaration in its summary judgment analysis.

**B. ReddyMade's Affirmative Defense and Counterclaim of Abandonment**

Turning to the summary-judgment motions, the Court begins with abandonment. ReddyMade argues that it could not have infringed the "Palazzolo's Cheese Hog" trademark because PMC—the trademark's previous owner—abandoned it before ReddyMade's foray

into the shredder industry. Doc. 74, PageID 4545–46. CHM counters that PMC never abandoned the mark, but rather always intended to sell it. Doc. 78, PageID 4697–4703.

An owner abandons a trademark when (1) "its use has been discontinued" with (2) "intent not to resume such use." 15 U.S.C. § 1127. Where nonuse spans three consecutive years, that is enough for a prima facie case of abandonment, even without other evidence of intent. *Id.* But where nonuse is for a period of less than three years, the party arguing abandonment must show that other evidence demonstrates intent not to resume use. One way to make that showing is through inferences from circumstantial evidence. *Id.*

The parties' arguments simplify the inquiry. CHM concedes that PMC discontinued its use of the "Palazzolo's Cheese Hog" mark. Doc. 78, PageID 4697. That concession leaves intent as the only disputed issue. And ReddyMade concedes that PMC's nonuse lasted for less than three years, so there is no statutory presumption in favor of abandonment. Doc. 74, PageID 4540. The only remaining question is whether ReddyMade can show that PMC intended not to resume use of the trademark.[2] There is evidence pointing in both directions, and "a reasonable jury could return a verdict" for either party on this issue. *Anderson*, 477 U.S. at 248. Thus, each party's motion for summary judgment fails.

---

[2] ReddyMade bears the burden of proof on both nonuse and intent. *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 575 (6th Cir. 2000). But the weight of that burden is uncertain. There is a circuit split on whether the standard is clear and convincing evidence or a preponderance of the evidence. *Compare, e.g.*, *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (preponderance), *with Perry v. H. J. Heinz Co. Brands L.L.C.*, 994 F.3d 466, 474 (5th Cir. 2021) (clear and convincing). The Sixth Circuit does not appear to have come down on either side, though an unpublished opinion described the burden of proof as "strict"—a term some district courts take to require clear and convincing evidence. *See Stilson & Assocs., Inc. v. Stilson Consulting Grp., LLC*, 129 F. App'x 993, 995 (6th Cir. 2005); *Nolan LLC v. TDC Int'l Corp.*, No. 06-14907, 2008 WL 11355576, at *2 (E.D. Mich. Mar. 31, 2008). Further confusing matters, Ohio trademark law appears to have a clear-and-convincing standard. *Cesare v. Work*, 36 Ohio App. 3d 26, 33 (9th Dist. 1987). And the Sixth Circuit treats federal and Ohio trademark law the same (at least as to doctrines they share). *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003). Ultimately, though, this Court need not decide ReddyMade's exact burden of proof because there is a genuine issue of material fact under either standard.

Start with ReddyMade's evidence. ReddyMade points first to Palazzolo's notice to PMC's customers that PMC would stop making its shredders and stop taking new orders. Palazzolo Dep., Ex. 2, Doc. 53-2, PageID 809. Next, ReddyMade notes that PMC stopped selling shredders and replacement parts by May 2020 at the latest (per Palazzolo) and perhaps even earlier, in 2019 (per customers). *Id.*, Doc. 53, 71:11–21; Brand Decl., Ex. E, Doc. 82-4, PageID 5073–74. Plus, Palazzolo took down PMC's website, which could suggest that he did not plan to resume use or entertain buyers. Palazzolo Dep., Doc. 53, 71:11–21. ReddyMade also cites PMC's dissolution in October 2020 as evidence that the lapse in use was intended to be permanent. *Id.*, Ex. 5, Doc. 53-5, PageID 824. What is more, Palazzolo said that when he posted the October 2019 letter shutting down operations, he did not think anyone in his family wanted to continue the business and did not "actively search" for buyers outside the family. *Id.*, Doc. 53, 44:3–22. In fact, Palazzolo's wife told a customer that PMC's inventory was being liquidated and that the plans to build the machines were not for sale. Brand Decl., Ex. E, Doc. 82-4, PageID 5073–74. And when Palazzolo finally turned PMC's assets over to Fahey, Fahey paid only a dollar—token consideration consistent with a valueless, abandoned mark. CHM Dep., Doc. 64, 194:6.

Additionally, at least some customers and suppliers believed that the Palazzolo Cheese Hog brand was no longer in existence. Lewandowski says a vendor told him that PMC's parts pattern was "abandoned." ReddyMade Dep., Doc. 67, 139:22–24. And a customer told Lewandowski that he was ""positive [Palazzolo] closed the company with no intentions for it to ever be open again." Wotrang Dep., Pls.' Ex. 3, Doc. 79-27, PageID 4944. A jury could conclude that the customers were correct and that the entire company, with the mark

included, were abandoned. Thus, ReddyMade has adduced sufficient evidence in its favor to avoid summary judgment on abandonment.

ReddyMade cites several authorities holding that a trademark is abandoned when its owner publicly announces indefinite nonuse. *See Blackwood v. Blackwood*, No. 3:03-CV-691, 2005 WL 2096857, at *3 (E.D. Tenn. Aug. 30, 2005) (relying on "an explicit admission that an entity is discontinuing the use of a mark"); *Sutton Cosmetics (P.R.) Inc. v. Lander Co., Inc.*, No. 71-CV-953, 1971 WL 17176, at *1 (S.D.N.Y. May 8, 1971) (relying on a company "announc[ing] its intention to discontinue" products sold under a trademark plus a decision "to abandon" and "refuse[] to sell" the mark); *Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.*, 720 F.2d 981, 983 (8th Cir. 1983) (relying on an announcement that a "[b]rand name[] will be eliminated"). In ReddyMade's view, the case at bar maps onto those ones, requiring this Court to find abandonment as a matter of law.

The Court disagrees. ReddyMade's authorities stand only for the blackletter proposition that public announcements like "trademark X will be eliminated" constitute abandonment. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:11 (5th ed. 2017) (quotation omitted). And ReddyMade offers no evidence that PMC announced the elimination of its "Palazzolo's Cheese Hog" mark. Instead, PMC said it would stop making *a particular product* that used the mark. Palazzolo Dep., Ex. 2, Doc. 53-2, PageID 809. But that leaves open the possibility that PMC would transfer the mark to someone else. Similarly, ReddyMade cites PMC's dissolution as a public acknowledgement of abandonment. *Id.*, Ex. 5, Doc. 53-5, PageID 824. While that dissolution announced that the PMC LLC would soon be eliminated, it did not announce that PMC's *trademark* would be eliminated. After all, an LLC like PMC survives dissolution to the extent needed to wind up

its affairs—including by assigning away assets (like trademarks). Ohio Rev. Code § 1706.471(B)(4); *see Sonista, Inc. v. Hsieh*, 348 F. Supp. 2d 1089, 1095 (N.D. Cal. 2004) (finding "dissolution of the trademark holder does not amount to an extinction of the rights . . . in that mark"). To be sure, Palazzolo's semi-retirement notice and PMC's dissolution constitute relevant circumstantial evidence of abandonment, but none of ReddyMade's evidence automatically disposes of the issue as a matter of law.

To see why, consider the other side of the scale: CHM's evidence. Only Palazzolo can be certain of his own intent during PMC's period of nonuse. And Palazzolo maintains—in both his deposition and declaration—that he intended to sell rather than abandon the business.[3] Palazzolo Decl., Doc. 65, PageID 2735; Palazzolo Dep., Doc. 53, 46:3–10. And efforts to sell the mark count as evidence of an intent to resume use. McCarthy, *supra*, § 17:14. Like ReddyMade, CHM points to circumstantial evidence to support its position on intent. For example, Palazzolo commissioned a valuation of PMC, saved "everything that would be needed to sell the company" (including trademark renewal information), and negotiated with potential buyers. Palazzolo Dep., Ex. 6, Doc. 53-6, PageID 830; *id.*, Doc. 53, 33:14–34:7, 38:9–10, 38:18–21. All those actions are consistent with an intent to sell the trademark—and to prevent it from lapsing. In fact, Palazzolo eventually found a buyer, transferring the trademark to CHM. CHM Dep., Doc. 64, 194:6. Overall, then, CHM counters with significant evidence that Palazzolo always intended PMC's mark to live on.

That is not to say that CHM is entitled to summary judgment on abandonment. A jury could well discount Palazzolo's claims about his own intent to sell the mark. It could credit

---

[3] Indeed, the evidence cited in this paragraph is sufficient to avoid summary judgment even without Palazzolo's declaration. This Court's denial of ReddyMade's motion to strike Palazzolo's declaration does not affect its conclusions on the motions for summary judgment.

ReddyMade's evidence that Palazzolo rejected purchase offers and failed to search for buyers over CHM's evidence that sales efforts slowed for valid reasons. *Compare* Palazzolo Dep., Doc. 53, 44:3–22 *with id.*, Doc. 53, 40:4–14, 44:19–25, 66:8–69:6. So did Palazzolo actually intend to sell PMC's mark throughout the nonuse period? A jury could go either way.

That is not the only material fact in genuine dispute, either. For example, when did PMC really stop selling machines and parts? The evidence conflicts. *Compare id.*, Doc. 53, 71:11–21 (explaining that parts were sold through May 2020), *with* Brand Decl., Ex. E, Doc. 82-4, PageID 5073–74 (claiming that parts were unavailable in 2019). That conflict matters: the "length of such non-use" is relevant "evidence from which an intent to abandon may be inferred," even if all agree on whether the three-year statutory presumption applies. *Cesare*, 36 Ohio App. 3d at 32; *Emergency One, Inc.*, 228 F.3d at 536 n.1, 538 (noting that "the inference" of intent not to resume use "strengthens with the duration of the non-use," even after "any presumption . . . dropped out"). So, the length of nonuse is material and in dispute. And that is just one piece of circumstantial evidence that a jury could see either way. Ultimately, abandonment is genuinely disputed.

In sum, neither CHM nor ReddyMade identifies any dispositive evidence in its favor on abandonment; each puts forward sufficient relevant evidence to support its view. Accordingly, the Court denies summary judgment on ReddyMade's Counterclaim I and associated affirmative defenses. *See* ReddyMade's Answer and Counterclaims, Doc. 31, PageID 520, 523, ¶¶ 1, 8.

### C. ReddyMade's Other Affirmative Defenses and Counterclaims

ReddyMade's other affirmative defenses and counterclaims are connected to its abandonment theory, and because there is a genuine dispute on abandonment, it follows that

there will be a genuine dispute of material fact on most of these other claims. The Court briefly identifies the elements and relevant evidence for each defense and counterclaim. But only one issue—fraud—is clear enough to escape the genuine disputes of material fact that preserved abandonment for trial. The Court grants summary judgment to CHM on ReddyMade's fraud-related defenses and counterclaims, and denies summary judgment to both parties on all other counterclaims and defenses.

*1. Estoppel*

Both parties moved for summary judgment on ReddyMade's affirmative defense of estoppel. Doc. 78, PageID 4712–15; Doc. 74, PageID 4537–45. Both motions fail. Estoppel is sufficiently intertwined with abandonment that both issues are enmeshed in the same genuine dispute of material fact.

To make out an estoppel defense, ReddyMade must show that PMC's "acts, representations," or "silence when [it] ought to speak out" induced reasonable and detrimental reliance by ReddyMade. *Atricure, Inc. v. Meng*, 12 F.4th 516, 526 (6th Cir. 2021). In other words, ReddyMade must show that PMC misled it into reasonably believing the mark was abandoned, causing ReddyMade's alleged infringement. In the trademark context, the reliance-generating "acts" that count for estoppel include both "actual misrepresentations" and "conduct amounting to virtual abandonment of the trademark." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 413–14 (6th Cir. 2002). Because abandonment is genuinely disputed, and estoppel can occur through virtual abandonment, there is a genuine dispute on whether PMC engaged in reliance-inducing acts or representations. And ReddyMade has produced enough evidence to at least create a genuine dispute as to whether it reasonably and detrimentally relied on PMC's acts. That means the

estoppel defense is strong enough to survive CHM's summary-judgment motion, but not strong enough to sustain ReddyMade's summary-judgment motion.

*First*, there is a genuine dispute of material fact on whether PMC's actions amounted to "actual misrepresentations" or "virtual abandonment of the trademark." *Id.* Proving actual misrepresentations is difficult for ReddyMade. ReddyMade points to Palazzolo's semi-retirement notice, PMC's dissolution, and a treatise identifying "a public announcement" of nonuse as a source of equitable estoppel. McCarthy, *supra*, § 17.11. But that same treatise says estoppel is triggered only if the announcement "unequivocally state[s] that the previous mark will no longer be used." *Id.* And neither PMC's dissolution nor Palazzolo's notice said the *mark* would no longer be used—only that PMC would stop selling graters and wind up the LLC. Palazzolo Dep., Ex. 2, Doc. 53-2, PageID 809; *id.*, Ex. 5, Doc. 53-5, PageID 824. Winding up an LLC can include selling its trademarks to new users. Ohio Rev. Code 1706.471(B)(4). Accordingly, the "actual misrepresentations" route towards estoppel is unavailing.

But the "virtual abandonment" path is more promising. The sum total of the evidence—including not just the dissolution and retirement notice, but also Palazzolo's and his wife's reluctance to sell, customers' perceptions that the Cheese Hog was gone for good, the disappearance of PMC's website, and the token consideration paid by Fahey—permit a jury to find virtual abandonment. *See* Brand Decl., Ex. E, Doc. 82-4, PageID 5073–74; Palazzolo Dep., Doc. 53, 44:3–22, 71:11–21; CHM Dep., Doc. 64, 194:6. Yet other evidence, like Palazzolo's description of his own intent, sales efforts, and preservation of records, allows a jury to reach the opposite conclusion. *See* Palazzolo Decl., Doc. 65, PageID 2735; Palazzolo Dep., Doc. 53, 33:14–34:7, 38:9–10, 38:18–21, 40:8–41:22. Therefore, there is a genuine

dispute of material fact regarding whether PMC's actions constituted virtual abandonment that could mislead third parties into believing the trademark was up for grabs.

*Second*, a jury could find that ReddyMade reasonably inferred from PMC's actions that PMC abandoned its mark and detrimentally relied on that inference. Reasonableness speaks for itself. This Court already found that a jury could reasonably decide the abandonment issue for either party. So ReddyMade could likewise reasonably decide that PMC's actions communicated abandonment of the mark. Indeed, ReddyMade took several steps to assure itself that PMC abandoned its mark, from consulting with counsel to checking with PMC's vendors. Lewandowski Dep., Doc. 60, 24:19–21, 26:1–5. And ReddyMade's reliance was potentially detrimental. ReddyMade started a "Cheese Hog" brand, only to rebrand a year later in response to infringement allegations. ReddyMade Dep., Ex. 33, Doc. 67-33, PageID 4161. ReddyMade also wasted time and resources on a failed USPTO registration. *Id.*, Doc. 67, 93:14–94:2. That means there is enough evidence of reasonable, detrimental reliance that ReddyMade can at least argue its estoppel defense to a jury.

The Court therefore denies both parties' motions for summary judgment on estoppel. *See* ReddyMade's Answer and Counterclaims, Doc. 31, PageID 523, ¶ 6.

<u>*2. Improper Assignment*</u>

One of ReddyMade's other defenses follows directly from its abandonment defense. Abandoned marks cannot be assigned. *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 675 (7th Cir 1982). Accordingly, if PMC abandoned its trademark, it could not have assigned it to CHM. Since there is a genuine dispute of material fact on abandonment, the same is true

of ReddyMade's Counterclaim I and affirmative defenses citing improper assignment.[4] The Court therefore denies summary judgment on those defenses and counterclaim. *See* ReddyMade's Answer and Counterclaims, Doc. 31, PageID 522–23, ¶¶ 4, 5, 8.

*3. Improper Renewal*

ReddyMade also lodges a counterclaim for cancelation of CHM's mark on the grounds that it was void as invalidly renewed. ReddyMade argues that 15 U.S.C. § 1058(a) requires an "owner" to swear that a trademark meets the renewal requirements, yet Fahey was the one who filled out CHM's renewal application. Doc. 14, ¶¶ 64–72. Because the mark was abandoned (and thus never validly assigned to CHM), neither Fahey nor CHM was the mark's "owner." *Id.* That means the mark's renewal process violated § 1058. *Id.* CHM moved for summary judgment on this counterclaim, arguing that either Fahey or CHM owned the mark via PMC's assignment and that any difference between Fahey and CHM was immaterial. Doc. 78, PageID 4703–07. Because that argument rises or falls with the disputed abandonment issue, the Court denies summary judgment on ReddyMade's Counterclaim II.[5]

---

[4] At times, the parties debate the assignment issue through the lens of the rule that a trademark cannot be assigned without its associated goodwill. *See Yellowbook Inc.*, 708 F.3d at 844. They thus discuss whether the assignment was in gross, and whether the one-dollar price shows that the goodwill had dissipated. Doc. 74, PageID 4545–46; Doc. 78, PageID 4704–05. But that framing adds little to the more straightforward rule that abandoned marks cannot be assigned—a rule neither side contests. *See* Doc. 78, PageID 4703. Indeed, the abandonment defense is a "consequence of the principle that trademarks are not independent of their related goodwill," so abandonment and goodwill are intertwined. *Yellowbook Inc.*, 708 F.3d at 844. Summary judgment is not appropriate on either.

[5] CHM failed to raise a more promising argument: Even if there was a § 1058 violation, canceling a mark may not be an appropriate remedy. Some authorities say a court's power to cancel an incontestable mark under 15 U.S.C. § 1119 is limited to the grounds specified in 15 U.S.C. § 1064(3). *See NetJets Inc. v. IntelliJet Group, LLC*, 678 F. App'x 343, 348 (6th Cir. 2017); *Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 9 F.3d 1091, 1099 (4th Cir. 1993). Those grounds include abandonment (Counterclaim I) and fraudulent renewal (Counterclaim III, considered next) but not a § 1058 violation (Counterclaim II). But without briefing on the interaction between 15 U.S.C. §§ 1064 and 1119 from the parties—and with only unpublished or out-of-circuit authority on point—the Court declines to reach that legal issue sua sponte.

*4. Fraudulent Renewal and Unclean Hands*

ReddyMade asserted two counterclaims and affirmative defenses based on a theory of fraudulent registration and unclean hands due to fraud. CHM moved for summary judgment, and ReddyMade did little to oppose summary judgment. The Court grants partial summary judgment on Counterclaims III and IV and the fraud-based affirmative defenses.

Fraudulent renewal claims have five elements: (1) a false, material representation, (2) knowledge or belief that the representation was false, (3) intent to induce the USPTO to rely on the misrepresentation, (4) "actual, reasonable reliance" thereon, and (5) proximate cause between reliance and damages. *Nelson v. MillerKnoll, Inc.*, 181 F.4th 651, 668 (6th Cir. 2026). The party arguing for renewal must prove all five elements by clear and convincing evidence. *Id.*

For the first element—a material misrepresentation—ReddyMade points to Fahey's statements in the affidavit accompanying his renewal application that (a) he owned the mark and (b) the mark is in use in commerce, plus (c) Fahey's omission of PMC's period of nonuse. Doc. 31, PageID 531–32, ¶¶ 74, 77–78.

Statements (b) and (c) are clearly not fraud. ReddyMade's arguments on statements (b) and (c) share a common premise: that an applicant must reveal *prior* nonuse. After all, no one disputes that CHM was using the mark to manufacture branded Cheese Hogs at the time Fahey filed the application in November of 2022. CHM Dep., Doc. 64, 305:5–306:16 (showing CHM's sales started in June 2022); *id.*, Ex. 3, Doc. 64-3, PageID 2429–33 (showing Fahey filed for renewal in November 2022). So ReddyMade must believe that Fahey had a duty to disclose PMC's prior period of nonuse. But that is wrong. Fahey's affidavit only had to "state that the mark *is* in use in commerce" and identify any goods "in connection with

which the mark *is* not in use in commerce." 15 U.S.C. § 1058(b)(1)(A), (2)(A) (emphasis added). The statute uses the present tense to describe the relevant period of use or nonuse. Thus, omitting prior nonuse while correctly noting that the mark "is in current use" is not fraud. *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986). That means statements (b) and (c) are not actionable.

Where PMC's nonuse is relevant is in statement (a): Fahey's claim that he owned the trademark. If PMC's nonuse constituted abandonment, then Fahey's ownership claim was false. And false ownership claims can be material. *See, e.g.*, *MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d. 456, 479–81 (W.D.N.Y. 2014); *Strome v. DBMK Enters., Inc.*, No. 14-CV-02398, 2014 WL 6485533, at *5 (N.D. Cal. Nov. 19, 2014) ("[O]wnership is a material fact."). So, the genuine dispute on abandonment also clouds the Court's assessment of whether Fahey's ownership statement was a material misrepresentation. But even assuming it was, no jury could find that ReddyMade proved by clear and convincing evidence that Fahey *knew* he was not the mark's owner. And without any genuine dispute on that necessary element, ReddyMade's fraud theory cannot survive summary judgment.

After all, to defeat ReddyMade's fraudulent renewal argument, CHM must show "only that [Fahey] believe[d] himself to be the owner of the mark." *Sovereign Order of Saint John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1241 (6th Cir. 1997). And CHM has offered substantial evidence on that point. Fahey expressed and explained his basis for his belief that the mark had not been abandoned to ReddyMade as early as February of 2022. CHM Dep., Ex. 2, Doc. 64-2, PageID 2406. Fahey cited the distinction between the dissolved PMC LLC and its leftover assets. *Id.* He also argued that the statutory presumption of abandonment triggered by three years of nonuse did not apply. *Id.* Fahey manifested his belief that the mark

was active by seeking an assignment from Palazzolo. *Id.*, Doc. 64, 194:6. And during the assignment and renewal process, Fahey repeatedly sought the USPTO's advice about how to comply with his obligations—including by informing the Office that PMC had been dissolved. Fahey Decl., Ex. 2, Doc. 65-2, PageID 2740. Finally, when Fahey believed the assignment he recorded was errant, he filed a corrective assignment to identify and fix his error. CHM Dep., Ex. 7, Doc. 64-7, PageID 2523. In other words, CHM's evidence shows that Fahey honestly believed he owned the mark and earnestly attempted to renew it. Fahey also swore off any intent to deceive. Fahey Decl, Ex. 2, Doc. 65-2, PageID 2741.

ReddyMade's entire argument on the knowledge-of-falsity element comprises one-and-a-half sentences and zero record citations: "PMC . . . knowingly filed a USPTO renewal which was improper because, at that time, PMC was not the rightful owner of the mark. Essentially, PMC knew that the mark had been previously abandoned, but falsely attested to the USPTO that the mark was in use in commerce." Doc. 82, PageID 5060. That allegation is incorrect: CHM, not PMC, was the party making attestations to the USPTO. Either way, allegations are not evidence. At summary judgment, once the moving party, CHM, points out that its adversary lacks supporting evidence, the nonmovant, ReddyMade, "cannot rest on its pleadings." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). Rather than recycling bare-bones allegations from its countercomplaint, ReddyMade had to "identify specific facts supported by affidavits, or by depositions . . . to show there is a genuine issue for trial." *Id.* Yet, ReddyMade "did not point to any such evidence." *Wimbush v. Wyeth*, 619 F.3d 632, 638 (6th Cir. 2010). Nor can ReddyMade assume the Court will "search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 638 n.4 (quotation omitted). It is ReddyMade's duty—not the Court's—to "point to the evidence with specificity . . . in

the relevant brief." *Id.* Since ReddyMade "offered nothing . . . but conclusory allegations in support of" its fraud theory, summary judgment is appropriate. *Sovereign Order of Saint John of Jerusalem, Inc.*, 119 F.3d at 1241.

Even if the Court were to search the record on its own, it would not find evidence that Fahey believed he was not the mark's owner. Instead, the evidence suggests that Fahey earnestly believed he was the owner, as described above. Abandonment is genuinely disputed, so the Court expects the parties will reach divergent conclusions in good faith. "Where there is reasonable doubt as to who is the owner of a mark, it is not fraud" for the "applicant" to state that he is "the owner." McCarthy, *supra*, § 31:71. Because abandonment is genuinely disputed, Fahey's claim to own the mark is not fraud.

For these reasons, the Court grants summary judgment to CHM on ReddyMade's Counterclaims III and IV and its corresponding affirmative defenses. *See* ReddyMade's Answer and Counterclaims, Doc. 31, PageID 520–23, ¶¶ 2, 3, 7.

**D. CHM's Claims**

Having resolved the motions on ReddyMade's affirmative defenses and counterclaims, the Court turns to CHM's claims. Because the abandonment issue's uncertainty pervades these claims too, the Court denies summary judgment.

*1. Federal Trademark Infringement*

CHM asserts federal trademark infringement under 15 U.S.C. § 1114. That section makes liable any person who uses a registered trademark in commerce without the registrant's consent. *Id.* § 1114(1)(a). Trademark infringement has three elements, all of which CHM must prove: (1) ownership of a registered trademark, (2) unauthorized use of the trademark (or a colorable imitation thereof) by ReddyMade, and (3) a likelihood of confusion among

consumers about the origin of the parties' goods. *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013).

Both sides moved for summary judgment on CHM's infringement claim. Doc. 78, PageID 4667–68; Doc. 74, PageID 4546–53. To win summary judgment, CHM must win summary judgment on *each* element of infringement, whereas ReddyMade only needs to win summary judgment on *any* element.

ReddyMade does not explicitly challenge the first two elements. *See* Doc. 82, PageID 5032. PMC continuously used its registered trademark in commerce for at least five years. Am. Compl., Ex. A., Doc. 25-1, PageID 462. Accordingly, PMC's ownership (and thus its ability to assign the mark to CHM) became incontestable except by an affirmative defense like abandonment. 15 U.S.C. §§ 1065, 1115(b)(2). As a result, ReddyMade contests ownership only through its affirmative defenses and because some of those defenses survived summary judgment, ownership is genuinely disputed. That is fatal to CHM's motion for summary judgment on infringement because it means CHM cannot win summary judgment on every element of the claim. *See* McCarthy, *supra*, § 32:121 ("[I]f" there is "viable evidence of an affirmative defense, a summary judgment of infringement is improper."). The genuine dispute on ownership does not, however, doom ReddyMade's motion for summary judgment on infringement. ReddyMade can still obtain summary judgment by winning beyond dispute on the third element—likelihood of confusion.

However, there is a genuine dispute of material fact on likelihood of confusion. The "ultimate question" is "whether relevant consumers are likely to believe that the products . . . offered by the parties are affiliated in some way." *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). That inquiry presents a mixed

question of law and fact. *Id.* As such, courts assess it through a balancing test involving eight factors—none of which are dispositive, many of which are "interrelated," and all of which are "simply a guide." *Id.*; *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.) (adopting and listing the eight factors). In other words, the likelihood-of-confusion test defies "mathematical precision." *Id.* "[T]rial courts disfavor deciding trademark cases in summary judgments." *Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 359 (6th Cir. 2006) (quotation omitted).

*2. Strength of the Mark*

The Sixth Circuit considers the conceptual and commercial strength of the senior mark—here, "Palazzolo's Cheese Hog." *Progressive Distrib. Servs., Inc. v. United Parcel Servs., Inc.*, 856 F.3d 416, 428 (6th Cir. 2017). This factor is inconclusive.

Conceptually, courts often classify trademarks as generic, descriptive, suggestive, or arbitrary. *Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 794 (6th Cir. 2004). Arbitrary marks are stronger than generic ones; they mark out a particular brand rather than merely stating the function of that brand's products. *Id.* "Palazzolo's Cheese Hog" is somewhere in the middle of the spectrum. It combines a common word ("Cheese") with a distinct family name ("Palazzolo") and a word that evokes the machine's function—taking in large quantities of cheese—but in a colorful manner ("Hog"). *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 281 (6th Cir. 1997) (affording less trademark strength to more common words). Accordingly, conceptual strength is mixed.

Commercially, the parties offer conflicting evidence. Commercial strength depends on the "distinctiveness of a mark" and the degree to which "people associate the mark with the product it announces." *Progressive Distrib. Servs., Inc.*, 856 F.3d at 427, 430. CHM argues that

several customers described PMC's Cheese Hog as the best in the industry, suggesting a strong association. *See, e.g.*, Gerritz Dep., Doc. 59, 70:3–13; Martinez Dep., Doc. 57, 23:4–23. On the other hand, ReddyMade says the mark lost its distinctive association with PMC's specific product, pointing out that some members of the industry use "Cheese Hog" to refer to cheese graters generally. *See, e.g.*, Martinez Dep., Doc. 57, 18:10–18; Alsamawi Decl., Ex. F, Doc. 82-5, PageID 5078. There is a genuine dispute on this factual issue.

Finally, incontestable marks are entitled to a presumption of strength. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 600 (6th Cir. 1991). And as described above, "Palazzolo's Cheese Hog" became incontestable—except against affirmative defenses like abandonment—because it was continuously used for five years. *See* 11 U.S.C. §§ 1065, 1115(b)(2). Because whether or not a presumption applies depends on the disputed abandonment issue. Ultimately, then, the first *Frisch's* factor is in dispute.

*3. Relatedness of the Goods*

Goods may be either direct competitors, somewhat related but not in competition, or totally unrelated. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 282. Courts ask where on that spectrum two goods fall—and whether "buyers are likely to believe" that the "similarly marked" goods "come from the same source, or are somehow connected with or sponsored by a common company." *Homeowners Grp., Inc.*, 931 F.2d at 1109.

Here, there was no direct competition. ReddyMade sold its shredders only between the time PMC stopped and CHM started. Lewandowski Dep., Doc 60, 67:6–9. As a matter of timing, PMC's alleged abandonment thus lessens the goods' relatedness. To be clear, "[c]onfusion can result even if plaintiff's product is no longer being made." McCarthy, *supra*, § 23:8. That is because a consumer may think the new product is sponsored or approved by

the maker of the old product. *Id.* (citing *Ferrari S.p.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1243–45 (6th Cir. 1991)). Accordingly, the timing mismatch is not dispositive. It is, however, relevant evidence against finding relatedness through direct competition.

Yet, in another sense, the goods are related. ReddyMade's shredder is "as close to a replica" of PMC's "as possible." ReddyMade Dep., Ex. 8, Doc. 67-8, PageID 3678. ReddyMade designed it that way to ensure customers know the products are similar. *Id.*, Doc. 67, 30:20–25. And the shredders' user manuals and website domain names are largely the same. *Id.* at 38:6–9, 40:6–8. Thus, buyers could believe the goods were connected or sponsored by a common enterprise. That means this factor weighs in CHM's favor, though the same timing problems underlying the abandonment dispute mitigate this factor's potency.

*4. Similarity of the Marks*

Courts consider whether the alleged infringer's mark, viewed in isolation, would confuse a consumer. *Wynn Oil Co.*, 943 F.2d at 601. They thus focus on the mark's general impression, not every little detail. *Id.* While the inquiry turns on how consumers would view ReddyMade's mark alone, a side-by-side image assists the Court's analysis:

**CHM's Mark** **ReddyMade's Mark**

The marks leave a similar general impression: a boar's head illustrating the "Cheese Hog" branding. Am. Compl., Doc. 25, ¶ 52. True, there is a color difference. Also true, the marks differ in that each lists the respective manufacturer (Palazzolo or ReddyMade), though in smaller font. Ultimately, the fact that ReddyMade's mark designates its true source helps with consumer confusion, but it does not overcome the marks' similarities. Accordingly, this factor weighs modestly in favor of CHM.

*5. Evidence of Actual Confusion*

While evidence of actual confusion is the best evidence of likelihood of confusion, this factor is in dispute here. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988). A "handful of instances of actual confusion" may not be enough. *Homeowners Grp., Inc.*, 931 F.2d at 1110 (collecting cases in which nineteen reports of confusion and three reports of confusion were insufficient). What is more, the number of instances a plaintiff needs to identify depends on the "period of time of concurrent sales." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 284. For those reasons, this factor is difficult to apply to this case and not easily susceptible to summary judgment.

After all, because of the facts underlying the abandonment issue, there is *no* period of concurrent sales here. This makes it difficult to determine how many instances of confusion are sufficient. Furthermore, while CHM points to twelve confused consumers, it is unclear if their confusion was related to the trademark in question. For example, CHM identifies a customer who expressed a "[l]ittle confusion" while trying to buy a "cheese grater." ReddyMade Dep., Ex. 16, Doc. 67-16, PageID 3747. But that customer did not mention the "Palazzolo's Cheese Hog" mark. He referred to "cheese grater[s]" generally. And his confusion did not stem from a belief that ReddyMade's product and PMC's product were sold

by the same company. Instead, the customer hypothesized (correctly) that PMC went "out of business" and asked whether ReddyMade was "taking over." *Id.*; *see also id.*, Ex. 23, Doc. 67-23, PageID 3753 (asking about a takeover). On the other hand, some customers did tie their confusion to the "cheese hog brand." *Id.*, Ex. 18, Doc. 67-18, PageID 3745. Consumer comprehension was therefore mixed.

Complicating matters further, ReddyMade identifies several customers who affirmatively denied confusing the brands. *See, e.g.*, Brand Decl., Ex. E, Doc. 82-4, PageID 5074; LeMay Decl., Ex. G, Doc. 82-6, PageID 5080; Valavanis Dep., Doc. 56, 17:4–20:8. Those examples paint the picture of an industry with minimal confusion: customers knew PMC had gone out of business, so they searched for a new cheese shredder brand. True, evidence of "a lack of" confusion is "rarely significant" by itself, but it can help contextualize instances of actual confusion as "isolated" rather than "considerable." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 284 (quotation omitted).

Overall, there seem to be only a few instances of actual confusion and a strong cross-current of well-informed customers who knew ReddyMade was a separate brand. Whether the instances of actual confusion cross the line from an insufficient "handful" to a sufficient "quantum" is genuinely disputed. *Homeowners Grp., Inc.*, 931 F.2d at 1110. Thus, it is up to a jury to weigh the parties' evidence.

<u>*6. Marketing Channels Used*</u>

The likelihood of confusion is greater when "the marketing approaches employed by each party resemble each other" and the parties' "predominant customers" are similar. *Gray v. Meijer, Inc.*, 295 F.3d 641, 649 (6th Cir. 2002). On the one hand, ReddyMade's customers and marketing approaches during the period of alleged infringement were almost identical to

PMC's earlier efforts and CHM's later ones. ReddyMade used a similar domain name, attended the same industry trade shows, and relied on the same customer base. ReddyMade Dep., Doc. 67, 40:6–8, 256:20–257:9; Martinez Dep., Doc. 57, 17:22–18:11, 39:11–17.

On the other hand, the marketing "factor focuses on the point of sale." *Gen. Motors Corp.*, 453 F.3d at 357. And of course, at the time of ReddyMade's allegedly infringing sales, neither PMC nor CHM was actively marketing Cheese Hogs. This matters because this factor is designed to target "overlap" in advertising—for example, placement of both the senior and junior marks on cars and buildings at the same dealership at the same time. *Wynn Oil Co.*, 943 F.2d at 602. Without overlap at the point of sale, this factor's relevance decreases. After all, the *reason* ReddyMade sold its Cheese Hogs to the same customers PMC had targeted was because those customers urged ReddyMade to start up after PMC shut down. *See, e.g.*, Wotrang Dep., Exs. 3–6, Docs. 79-4–7, PageID 4874–82. So once again, the facts underlying ReddyMade's disputed abandonment theory unsettle the likelihood of confusion analysis.

*7. Likely Degree of Purchaser Care*

The purchaser care factor does little to resolve the parties' dispute. ReddyMade rightly argues that customers for expensive machines marketed towards businesses are likely sophisticated. *See Homeowners Grp.*, 931 F.2d at 1111 (noting a higher degree of consumer caution when buyers have "expertise" or are otherwise "more sophisticated"). That consideration tips the purchaser care factor in ReddyMade's favor. But the weight of this factor depends on its relationship to other factors. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285. For example, if two marks are highly similar, they may confuse even a highly sophisticated customer. And if there is substantial evidence that customers are actually confused, there is little reason to speculate whether a brand's purchasers are sophisticated

enough to avoid confusion. Ultimately, this factor cuts mildly in ReddyMade's favor, but its weight depends on other factors that are mired in dispute.

*8. Defendants' Intent in Selecting the Mark*

The intent factor "may benefit only the cause of a senior user, not of an alleged infringer." *Id.* at 287. After all, intent is not an element an infringement plaintiff must prove; it is merely evidence from which a factfinder could infer likelihood of confusion. That means if ReddyMade's intent was to "creat[e] confusion between its products and those of another company," this factor favors CHM—but if no such intent existed, this factor is neutral. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 638–39 (6th Cir. 2002). The intent-to-confuse factor is difficult to apply to this case.

Start with CHM's arguments. As a proxy for "intent of causing confusion," courts sometimes look for "intentional copying." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 286. And to infer intentional copying, they identify (1) "use of a contested mark" and (2) "knowledge of the protected mark at issue." *Id.* Here, no one disputes that ReddyMade used the contested "Cheese Hog" branding. Nor is there any dispute that ReddyMade knew about the "Palazzolo's Cheese Hog" mark. ReddyMade Dep., Doc. 67, 29:9–14. What is more, CHM points to plenty of evidence that ReddyMade intentionally copied PMC's mark and product. For example, ReddyMade reverse engineered the shredder's design and used the name "Cheese Hog" so customers would know the products were similar. *Id.* at 18:16–22:5, 30:4–11. Ultimately, CHM presents a strong case for intentional copying.

Yet, CHM also faces a problem. The reason courts sometimes treat intentional *copying* as a proxy for intentional *confusion* is that copycats generally hope to "divert some business from the senior user." *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 572 (6th Cir.

1987). At the time of ReddyMade's alleged infringement, the markholder had no business to divert. That means the leap from copying to "bad-faith intent" does not follow automatically in this case. *AutoZone, Inc.*, 373 F.3d at 799.

Indeed, ReddyMade took some steps to verify abandonment—like seeking advice of counsel—before using the mark. Lewandowski Dep., Doc. 60, 22:14–24:21. But on the other hand, ReddyMade also sought advice on leveraging the phrase "Cheese Hog" without "blatantly putting it on our website," suggesting some consciousness of legal risk. ReddyMade Dep., Ex. 42, Doc. 67-42, PageID 4184. So "[t]here is some dispute concerning whether or not" ReddyMade "displayed bad faith." *Progressive Distrib. Servs., Inc.*, 856 F.3d at 436. A reasonable jury could think ReddyMade intentionally confused customers. Alternatively, it could think ReddyMade simply clarified its product through a good-faith comparison to an abandoned industry staple. This factor is genuinely disputed.

*9. Likelihood of Expansion of the Product Lines*

Where the products already occupy the same market and neither party presents evidence that it intends to expand its product offerings, this factor is neutral. *Little Caesar Enters., Inc.*, 834 F.2d at 572; *Therma-Scan, Inc.*, 295 F.3d at 639. So too here. In sum, two of the *Frisch's* factors tilt toward CHM: relatedness and similarity. One modestly favors ReddyMade: purchaser care. Another, likelihood of expansion, is neutral. Still others are contested—and many turn on the same factual disputes that clouded the abandonment defense. The need to balance these factors cautions against summary judgment. Likelihood of confusion is genuinely disputed, and because a jury will hear the relevant evidence anyway when deciding abandonment. This makes the case at bar a poor candidate for the "disfavor[ed]" judicial activity of granting summary judgment on likelihood-of-confusion

grounds. *Gen. Motors Corp.*, 453 F.3d at 359. Accordingly, the final basis for ReddyMade's summary-judgment motion fails. Likewise, the genuine dispute on likelihood of confusion is an additional reason why CHM cannot win summary judgment on its infringement claim.

Finally, CHM (but not ReddyMade) moves for summary judgment on the issue of whether ReddyMade's alleged infringement was willful. Doc. 78, PageID 4685. That is because willful violations may give rise to enhanced damages under 15 U.S.C. § 1117. But because the Court denies both parties' motions for summary judgment on CHM's federal trademark infringement claim, it denies summary judgment on willful infringement, too.

*10. Other Claims*

Both CHM and ReddyMade moved for summary judgment on CHM's federal unfair competition and false designation of origin claim. That claim "mirror[s]" the trademark infringement claim because it requires a likelihood of confusion. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 288. Because likelihood of confusion is unfit for resolution at summary judgment, summary judgment is inappropriate on CHM's unfair competition claim, too.

The parties also moved for summary judgment on CHM's state-law trademark and deceptive trade practices claims. Those Ohio claims are based on the same underlying facts as the federal versions. And "trademark claims under Ohio law follow the same analysis as those under the Lanham Act." *ETW Corp.*, 332 F.3d at 920. Similarly, "[b]oth Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters*, 280 F.3d 619, 626 n.2 (6th Cir. 2002). Both parties thus support their summary-judgment arguments on CHM's state-law claims simply by pointing out that their fates are tied to the fates of the federal claims. Doc. 78, PageID 4696; Doc. 82, PageID 5044.

For the same reasons this Court denied summary judgment on CHM's federal trademark infringement claims, this Court also denies both parties' motions summary judgment on CHM's other claims.

## IV. CONCLUSION

For the reasons stated, the Court **DENIES** ReddyMade's Motion for Summary Judgment (Doc. 74) and **DENIES IN PART AND GRANTS IN PART** Cheese Hog's Motion for Summary Judgment (Doc. 78). The Court also **DENIES** ReddyMade's Motion to Strike Plaintiff's Exhibit 65-1 (Doc. 84). Finally, the Court **DISMISSES** Counterclaims III and IV from ReddyMade's Amended Answer and Countercomplaint (Doc. 31) **WITH PREJUDICE**.

**IT IS SO ORDERED.**

September 11, 2026

Jeffery P. Hopkins
United States District Judge